IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BRYCE BOURDIEU,**
**JULIE RENEE FARR**

     **Plaintiffs,**

**v.**                                    **2:23-cv-00165-DHU-JHR**

**SHAE COX, and**
**SLC RACING, LLC,**

     **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion for Summary Judgment as to Plaintiffs' Claims (Doc. 150). Plaintiff Bryce Bourdieu ("Plaintiff Bourdieu" or "Bourdieu") and his mother, Julie Farr ("Plaintiff Farr"), filed a complaint alleging various tort claims, breach of contract, and fraud by Defendant Shae Cox ("Defendant Cox") and SLC Racing, LLC (collectively "Defendants"), in connection with an incident during which Plaintiff Bourdieu sustained serious injuries after being toppled by a horse on Defendant Cox's ranch. After substantial motion practice and a period of discovery, Defendants filed the Motion for Summary Judgment that is now before the Court. After carefully considering Defendants' motion, the attendant briefs, the parties' oral arguments, and being fully advised of the premises, the Court concludes that the motion will be **GRANTED** in part and **DENIED** in part.

I.
BACKGROUND

This action arises from a horse-related accident that occurred on August 11, 2022, on Defendants' property in Elgin, Texas. Plaintiffs allege that Defendants' employees and agents on

the property negligently allowed Plaintiff Bourdieu to mount a racehorse without having the necessary training and/or experience, resulting in an accident whereby the horse panicked in the gate, fell on Bourdieu, and caused him to sustain a severe spinal cord injury, a broken rib, a leg injury resulting in amputation, loss of a testicle, and permanent and partial disability, among other injuries. *See* Plaintiffs' Second Amended Complaint at 2 (Doc. 107). Plaintiffs bring claims against Defendants for negligent or unlawful operation of a training facility, gross negligence, breach of contract, and fraud. *Id.* at 4-5, 8-11. Litigation has been extensive, and the Court has discussed the procedural history of this case at length in a previous order. *See* Doc. 106. Since that order, the parties have conducted discovery, and additional motions have been filed. On May 27, 2025, Defendants filed a Motion to Change Venue. Doc. 144. On June 6, 2025, Defendants filed a Motion for Summary Judgment. Doc. 150. And on June 18, 2025, Plaintiffs filed a Motion for Partial Summary Judgment. Doc. 157. The Court held a hearing on all three motions on September 17, 2025, denying Defendants' Motion to Change Venue and Plaintiffs' Motion for Partial Summary Judgment from the bench. September 17, 2025 Hearing Transcript at 20:23-21:7, 32:15-19.[1] With respect to Defendants' Motion for Summary Judgment, the Court took the parties' arguments under advisement and addresses that motion in the present opinion.

## II.
## LEGAL STANDARDS

A party is entitled to summary judgment "if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021) (quoting FED. R. CIV. PRO. 56(a)). The party seeking

---

[1] Hereafter, this Memorandum Opinion and Order cites to the court reporter's unofficial transcript of the Motion Hearing as "Mot. Hr'g Tr. at page:line(s)." Page citations are subject to change on the official, edited version of the transcript.

summary judgment bears the initial burden of "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "A fact is material if it can have an impact on the outcome of the lawsuit[.]" *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021) (internal quotation omitted). The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005) (internal quotation omitted). In deciding summary judgment motions, the Court views the evidence and makes inferences in the light most favorable to the nonmovant. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

## III.
## DISCUSSION

### A.  Plaintiffs' Gross Negligence Claim.

In their Motion for Summary Judgment, Defendants argue that summary judgment is appropriate on all of Plaintiffs' claims related to the personal injury Plaintiff Bourdieu sustained because they are immune from liability under the Texas Farm Animal Activity Act, TEX. CIV.

PRAC. & REM. CODE §§ 87.001-87.005 (the "Act"). Defendants rely on Section 87.003 of the Act, which provides that:

> Except as provided by Section 87.004, all persons, including a farm animal activity sponsor, farm animal professional, farm owner or lessee, livestock producer, livestock show participant, or livestock show sponsor, **are not liable for property damage or damages arising from the personal injury or death of a participant in a farm animal activity** or livestock show if the property damage, injury, or death results from the dangers or conditions that are an inherent risk of a farm animal, a farm animal activity, the showing of an animal on a competitive basis in a livestock show, or the raising or handling of livestock on a farm[.]

*Id.* § 87.003 (emphasis added). The parties do not dispute that Texas law applies to Plaintiffs' negligence claim because the incident that caused Plaintiff Bourdieu's injuries occurred on Defendants' property in Texas. Nor does there seem to be any dispute that the provisions of the Texas Farm Animal Activity Act apply in this case.[2]

What the parties do dispute, however, is whether any of the exceptions to immunity from liability found in the Act are applicable here. The Act provides six exceptions to immunity from liability, which include when:

> (1) the injury or death was caused by faulty equipment or tack used in the farm animal activity or livestock show, the person provided the equipment or tack, and the person knew or should have known that the equipment or tack was faulty;
>
> (2) the person provided the farm animal or livestock animal and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the farm animal activity, including a work activity, or livestock show and determine the ability of the participant to safely manage the farm animal or livestock animal, taking into account the participant's representations of ability;

---

[2] At the hearing held by the Court, the parties agreed that the Act applies, so the Court assumes the parties are in agreement that Defendants are *persons* as stated in the Act, Plaintiff Bourdieu was a *participant* in a farm animal activity, and that injury resulting from riding or galloping racehorses was an *inherent risk* of that activity. *See* Mot. Hr'g Tr. at 35:14-21.

(3) the injury or death was caused by a dangerous latent condition of land for which warning signs, written notices, or verbal warnings were not conspicuously posted or provided to the participant, and the land was owned, leased, or otherwise under the control of the person at the time of the injury or death and the person knew of the dangerous latent condition;

(4) the person committed an act or omission with willful or wanton disregard for the safety of the participant and that act or omission caused the injury;

(5) the person intentionally caused the property damage, injury, or death; or

(6) with respect to a livestock show, the injury or death occurred as a result of an activity connected with the livestock show and the person invited or otherwise allowed the injured or deceased person to participate in the activity and the injured or deceased person was not a participant as defined by Section 87.001(9)(B).

*Id.* § 87.004.

Although it is somewhat unclear from the motion for summary judgment and the response to that motion exactly what is disputed or undisputed by the parties, further clarification on the issue was obtained at the hearing on the motion held by the Court on September 17, 2025. The parties agreed, for instance, that it was undisputed that the first, third, fifth, and sixth exceptions were not at issue here and did not waive immunity for Defendants.[3]  Therefore, to the extent Plaintiffs may have previously asserted that these exceptions applied to waive Defendants' immunity under the Act, summary judgment is appropriate as to each of them. The parties could

---

[3] As to the first exception, Plaintiffs contend that no equipment was provided to Bourdieu but nevertheless conceded that the exception did not apply because Defendants did not provide faulty equipment or tack. *See* Mot. Hr'g Tr. at 83:17-85:2. Regarding the third exception, Plaintiffs agreed that Bourdieu's injuries were not caused by a dangerous latent condition of land. *Id.* at 89:8-12. Plaintiffs did not argue, either in their response to Defendants' motion or at the hearing on the motion, that the fifth and sixth exceptions applied to waive Defendants' immunity under the Act, so the Court finds there is no dispute that those exceptions do not apply.

not agree, however, as to whether the evidence of record could support the applicability of the second and fourth exception and whether the undisputed facts supported the Defendants' assertion that they were entitled to judgment as a matter of law on these two exceptions.

**1.** **The Second Exception to Immunity From Liability Under Section 87.004 of the Act.**

Defendants contend the undisputed facts show that the second exception to immunity under the Act is not applicable in this case. The second exception provides that a person who would otherwise be immune from liability under the Act waives that immunity if:

> [T]he person provided the farm animal . . . and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the farm animal activity . . . and determine the ability of the participant to safely manage the farm animal . . . taking into account the participant's representations of ability.

*Id.* § 87.004(2).

At the outset, the Court notes that Defendants did not specifically identify as one of their "undisputed material facts" that Defendants did not provide the racehorse to Plaintiff Bourdieu *See* Doc. 150 at 3-6, Undisputed Material Facts Nos. 1-15. Instead, Defendants assert, and Plaintiffs do not dispute, that Plaintiff Bourdieu was working on Defendants' property at the time of the incident and the racehorse that toppled him was not owned by Defendants but was on the property while being trained by Leonel Hernandez, a trainer who rented stalls from Defendant SLC Racing, LLC. *Id.* at 3-4, Undisputed Material Fact No. 1. This is not the same as saying that Defendants did not provide the horse to Bourdieu, and Defendants provide no citation to legal authority that would support the contention that Defendants must have *owned* the racehorse that injured Bourdieu

to be found liable for the injuries he sustained.[4]  Defendants concede that the racehorse was kept

on their property and was being trained by Leonel Hernandez, and the deposition testimony

provided to the Court indicates that, per the instructions of Defendant Cox,  Plaintiff Bourdieu was

to "follow [the] instruction" of Leonel Hernandez regarding horses. Deposition Testimony of Shae

Cox, Doc. 150-4 at 35:12. Absent any legal authority that would require Defendants to have owned

the horse, the Court will leave it to the jury to determine whether Defendants provided the horse

to Plaintiff as contemplated by the Act.[5]

       In support of their argument that the second exception to immunity does not apply,

Defendants also assert as an undisputed material fact that "Defendants were aware of and knew of

Plaintiff Bourdieu's prior experience before he began riding horses for Defendants at their

property." Doc. 150 at 4, Undisputed Fact No. 2. Defendants further contend in the argument

section of their motion that "[t]he undisputed facts establish that Defendants had made a reasonable

and prudent effort to, not only ascertain Plaintiff Bourdieu's abilities to gallop race horse[s] and

to take them through the gate as Plaintiff was doing when he was injured, but Plaintiff admitted

that he had been provided training and had previously gained experience in that activity under the

---

[4] Although not in Defendants' briefing, at the hearing held by the Court on the motion, Defendants'
counsel argued that Defendants did not provide the horse to Bourdieu and therefore the second
exception to immunity under the Act did not apply. *See* Mot. Hr'g Tr. at 72:2-7. There are two
problems with the assertion made by Defendants. First, they did not explicitly argue this contention
in their motion as an undisputed fact and thus Plaintiffs had no opportunity to rebut it with evidence
they may have identified from the record. Second, at the hearing, Defendants' counsel could not
answer the Court's question regarding whether Defendants could have "provided" the horse to
Bourdieu, for purposes of the second exception to immunity of the Act, if the evidence showed
that her employees or Leonel Hernandez instructed him to get on the horse. *See id.* at 72:2-74:9.

[5] The Court notes that although the parties agree that Texas law applies to the claims brought by
Plaintiffs, neither party cites to a single Texas case interpreting the provisions of the Texas Farm
Animal Activity Act. This is not acceptable, as it is not the Court's obligation to research the issue
for the parties. For trial, the Court will require that the parties jointly propose jury instructions on
the issues raised by the Act based on current Texas law.

supervision of Defendants." *Id.* at 9. According to Defendants, there could be no dispute that "[t]he horse that injured Plaintiff was not beyond his experience or capabilities known to the Defendants, regardless of whether or not Defendants acting through their agents directed or authorized Plaintiff Bourdieu to gallop that particular horse, because there was nothing unique or dangerous about that horse." *Id.* at 5, Undisputed Fact No. 8. At the hearing on the motion, Defendants' counsel provided further explanation, stating that the record showed that Plaintiff Bourdieu had worked for other trainers or individuals that participated in the racehorse industry. *See* Mot. Hr'g Tr. at 40:8-20. Thus, Defendants were aware of and knew that Plaintiff Bourdieu had experience with racehorses. In support of their argument, Defendants cite to excerpts from the deposition testimony of Plaintiff Bourdieu as well as the deposition testimony and sworn affidavit of Defendant Shae Cox. *Id.* at 4-5, Undisputed Facts Nos. 2, 3, and 8.

Plaintiffs do not dispute that Defendants were aware of and knew of Plaintiff Bourdieu's prior experience, but they contend that Defendants knew and understood that Bourdieu was not very experienced on racehorses. Doc. 165 at 1-2, Response to Undisputed Fact No. 2. Plaintiff argues that the evidence shows the reason he was at Defendants' ranch was to learn how to ride and be a horseman. *Id.* Plaintiffs also contend that Defendants mischaracterize the training Bourdieu received, arguing that such training included only a directive to follow instructions from two individuals authorized to supervise Bourdieu—Leonel Hernandez, who would give him pointers, and Junior Rosales, who was to help Bourdieu learn how to gallop horses. Doc. 165 at 2, Response to Undisputed Fact No. 3. In support of their arguments on this issue, Plaintiffs cite to excerpts from the deposition testimony of Plaintiff Farr and Defendant Cox. *Id.*

Again, the Court notes that Defendants did not specifically state in their "undisputed material facts" that they had made a reasonable and prudent effort to determine the ability of

Plaintiff Bourdieu to participate safely in any activity related to the galloping of racehorses or to determine Bourdieu's ability to safely manage such horses. *See* Doc. 150 at 3-6, Undisputed Material Facts, Nos. 1-15. Therefore, Plaintiffs did not directly address this assertion in their response to the motion. Moreover, as discussed above, the parties seem to disagree on exactly what Defendants knew about Plaintiff Bourdieu's experience with racehorses. And contrary to Defendants' arguments in their motion and at the hearing held by the Court, most of the cited evidence does not suggest that it is undisputed that Plaintiff Bourdieu was well-experienced in riding or galloping racehorses like the one that toppled him.[6]

The closest Defendants come to showing that Defendant Cox had knowledge that Plaintiff Bourdieu was skilled enough to gallop or ride the racehorse that toppled him was Defendant Cox's statement in paragraph seven of her affidavit, where she states that A Lady's Dynasty, the racehorse that threw Plaintiff Bourdieu, was not one of the horses she had authorized Bourdieu to gallop but nevertheless was not a horse that was beyond Bourdieu's training and abilities. Doc.

---

[6] For instance, in the excerpts of Plaintiff Bourdieu's deposition that Defendants rely on, he testified that in the past he had ridden "pony horses," which were older, retired racehorses and that he rode these pony horses next to someone else who would be riding the racehorses. Dep. Test. of Bryce Bourdieu, Doc. 150-1 at 27:10-28:9. Defendants also cite to testimony later in Plaintiff Bourdieu's deposition, where he stated that he had volunteered for two months cleaning out stables and riding pony horses with a trainer in Farmington, New Mexico, and later, after graduating from high school, worked for a trainer and took care of racehorses by cleaning their stalls, getting them saddled for exercise, and giving them water and food. *Id.* at 51:14-54:25. Defendants also rely on paragraph four of Defendant Shae Cox's affidavit and excerpts from her deposition testimony. In the cited paragraph of her affidavit, Defendant Cox states that she knew of Plaintiff Bourdieu's desire to be a jockey and was aware of the training and experience he had received from a man named Juan Gonzalez prior to the time she offered Bourdieu an opportunity to work for her in exchange for training and experience on galloping racehorses. Doc. 150-3 at 1-2. In the cited lines from her deposition, Defendant Cox testified that when she brought Plaintiff Bourdieu to her ranch, she told him he would have to help maintain the grounds, cut grass, pick up trash, help with the horses, etc., and that there were a few select horses of hers that Bourdieu could "gallop to learn." Dep. Test., Doc. 150-4 at 19:9-24. None of this evidence establishes, without dispute, that Plaintiff Bourdieu was skilled enough to gallop or ride the racehorse that toppled him.

150-3 at 2. Plaintiffs, however, dispute that Bourdieu had the ability and skill to ride or gallop a racehorse. Doc. 165 at 5. Plaintiffs cite to Defendant Cox's testimony that Bourdieu never should have been on that horse and that he was only allowed to ride horses that were older and more mature. Dep. Test. of Shae Cox, Doc. 150-4 at 51:19-20-52:18. As to Defendants' implication that it is irrelevant whether Bourdieu was sufficiently trained or experienced in galloping racehorses because he was specifically instructed that he was only to ride certain horses that were identified by Defendant Cox, Plaintiff Bourdieu testified that he was directed to mount A Lady's Dynasty by Leonel Hernandez, an individual who Defendant Cox identified as having the authority to instruct Plaintiff Bourdieu on which horse he could ride because she trusted Hernandez "with [her] life." *Id.* at 52:9; Dep. Test. of Bryce Bourdieu, Doc. 150-1 at 95:5-21.

In sum, after reviewing the evidence of record, considering the arguments made by the parties both in their briefs and at the hearing on Defendants' motion, and viewing the evidence and drawing inferences in the light most favorable to Plaintiff, the Court finds that there is a genuine issue of disputed material fact as to the applicability of the second exception to immunity found in the Texas Farm Animal Activity Act. Although the parties agree that Defendant Cox was aware of Plaintiff Bourdieu's experience and abilities to ride a racehorse, there are genuine issues of material fact concerning what that experience and ability was and whether Defendant Cox knew that Bourdieu did not have the ability to safely manage the horse that injured him. This is critical because to show the applicability of the second exception in this case, Plaintiffs will have to prove at trial that the failure to make the required determination of Plaintiff Bourdieu's abilities was the cause of his injuries. *See Loftin v. Lee*, 341 S.W.3d 352, 359 (Tex. 2011). Because the disputed facts call into question whether the second exception found in Section 87.004 waives Defendants'

immunity from liability under the Act, the Court will leave it to the jury to make the factual

determinations necessary to resolve the issue.

   2.   **The Fourth Exception to Immunity From Liability Under Section 87.004 of the Act.**

   Under the Act, a person who would otherwise be immune from liability for damages related

to injuries suffered by a participant in a farm animal activity waives that immunity if he or she

"commit[s] an act or omission with willful or wanton disregard for the safety of the participant

and that act or omission caused the injury." TEX. CIV. PRAC. & REM. CODE § 87.004 (4). In this

context, willful and wanton disregard is "synonymous with gross negligence" and means "that

entire want of care which would raise the belief that the act or omission complained of was the

result of a conscious indifference to the right or welfare of the person or persons to be affected by

it." *Young v. McKim*, 373 S.W.3d 776, 783 (Tex. App. 2012) (internal quotation omitted).

   In their motion for summary judgment, Defendants spend two sentences arguing that this

exception to immunity does not apply, stating that:

> Finally, the undisputed facts establish that 'A Lady's Dynasty" was
> a typical racehorse, with no pattern of erratic or unsafe behavior,
> that behaved as [a] young racehorse would and that Defendants did
> not direct Plaintiff Bourdieu [to] ride 'A Lady's Dynasty' intending
> to hurt him or with any wanton or willful disregard for the Plaintiff's
> safety. *See* UMF nos. 8 and 9. The undisputed material facts,
> instead, establish, that Plaintiff Bourdieu mounted "A Lady's
> Dynasty," of his own free will, neglecting to take all of the tack he
> knew he was supposed to take to engage in activity well-within the
> training that Defendants had provided to him, and that the horse
> behaved consistent with the "inherent risk of a [horse]."

Doc. 150 at 10. In support of their position, Defendants first cite to their Undisputed Material Fact

No. 8, which states that "[t]he horse that injured Plaintiff was not beyond his experience or

capabilities known to Defendants, regardless of whether or not Defendants acting through their

agents directed or authorized Plaintiff Bourdieu to gallop that particular horse, because there was

nothing unique or dangerous about that horse." *Id.* at 5, Undisputed Material Fact No. 8. That A Lady's Dynasty did not have a prior history of being erratic or unsafe, however, is not dispositive of the issue because, as discussed above, the Court has found there exists a genuine issue of material fact as to whether Bourdieu had the experience and skill necessary to ride or gallop the racehorse, regardless of its past history. The Court thus finds no merit in the contention that this entitles Defendants to summary judgment on the applicability of the fourth exception.

Defendants also rely on Undisputed Material Fact No. 9, which states:

> Plaintiffs were told by Defendant that Plaintiff Bryce Bourdieu would eventually be instructed and trained in the galloping of horses, and that he would only be allowed to gallop racehorses under the direct supervision of Defendant Shae Cox and her horse trainer Leo Hernandez. Plaintiff Bourdieu acknowledged that he rode the horse in question despite not being under the direct supervision of Ms. Cox or Mr. Hernandez as restricted.

*Id.*, Undisputed Material Fact No. 9.

Plaintiffs disagree that these facts support the conclusion that the fourth exception to immunity under the Act does not apply. The crux of their argument is that regardless of what Defendant Cox had told Bourdieu about the horses he was allowed to ride and under whose supervision he could ride them, there is a genuine dispute as to whether Defendants acted with willful or wanton disregard for Bourdieu's safety when Bourdieu was directed by Leo Hernandez and Junior Rosales—the individuals who were tasked by Defendant Cox to supervise him—to mount the racehorse that injured him. Doc. 165 at 7.

The Court finds the evidence supports the contention that Plaintiff Bourdieu was instructed by Defendant Cox that he was only allowed to gallop racehorses under her direct supervision or under the supervision of her trainer, Leo Hernandez. However, Plaintiff Bourdieu testified that he was also told to obey the direction of Hernandez and Rosales and to do "whatever they said." Dep.

Test. of Bryce Bourdieu, Doc. 150-1 at 124:19. He testified that on the day of the incident he was told by an individual named Abraham Castro that Leo Hernandez had called to instruct that both Bourdieu and Rosales were to gallop the racehorses that day because the individual who was supposed to gallop them would not be showing up. *Id.* at 91:23-92:3. According to Plaintiff, he did not believe Castro at first, so he asked to hear the voice message left by Hernandez. *Id.* at 92:4-7. Castro then played the message for both Plaintiff Bourdieu and Rosales, which apparently confirmed Hernandez's instruction. *Id.* at 92:8-9. Plaintiff then began to pick the horse he would gallop, which was a filly he believed would not be as tough to ride, but was instructed by Junior Rosales to mount A Lady's Dynasty instead, the racehorse that would eventually throw Bourdieu and injure him. *Id.* at 92:8-93:18.

Based on this testimony, the Court determines there exists a genuine issue of material fact concerning whether Defendants acted with willful and wanton disregard for the safety of Plaintiff Bourdieu by instructing him to gallop a racehorse which was not on their own approved list of horses Bourdieu could ride.[7]

### B. Plaintiffs' Other Claims

#### 1. <u>Breach of Contract Claim</u>

In their motion, Defendants do not specifically argue that summary judgment is appropriate on Plaintiffs' breach of contract claim but do assert in their Undisputed Material Fact No. 14 that "[t]he [sic] was no contract between Defendants and Plaintiff Farr." Doc. 150 at 6. In support of this contention, Defendants cite only to pages 72 through 74 of the deposition testimony of Plaintiff Farr. *Id.*

---

[7] Defendants do not make any argument or provide any legal authority that would support the contention that the actions of Hernandez and Rosales cannot or should not be imputed to Defendant Cox on these facts, so the Court does not address the issue.

Plaintiffs dispute the contention that there was no contract between Defendant Farr and Defendant Cox, arguing that there was a verbal contract between them that obliged Defendant Cox to provide liability insurance to Plaintiff Bourdieu in the event he was to be injured. Doc. 165 at 9-10. For this position, Plaintiffs rely on the deposition testimony of Plaintiff Farr at pages 89-90, 92-94. *Id.*

The Court has reviewed the evidence cited by the parties and again concludes that the deposition testimony relied on by Defendants does not establish that it is undisputed there was no binding verbal or oral contract between Plaintiff Farr and Defendant Cox.[8]  In the excerpts of her deposition testimony cited by Defendants, Plaintiff Farr testified that Defendant Cox assured her that she would look out for the safety of Plaintiff Bourdieu and that she was insured. Dep. Test. of Julie Farr, Doc. 150-2 at 72:6-11. Plaintiff Farr also agreed that she was aware there had been conversations between Bourdieu and Defendant Cox prior to the time he arrived at Defendant Cox's ranch. *See id.* at 73:5-75:17.

Even read generously, this testimony does not establish that it is beyond dispute that a contract did not exist between Defendant Cox and Plaintiff Farr. To the extent Defendant moves for summary judgment on Plaintiffs' breach of contract claim, that request will be denied.[9]

---

[8] Texas law recognizes oral or verbal contracts and provides that the elements of written and oral contracts are the same and must be present for a contract to be binding. *See Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App. 2012), *aff'd*, 432 S.W.3d 885 (Tex. 2014). In their motion, Defendants do not cite to the applicable law and do not argue that the elements of an oral contract are not present in this case such that they are entitled to judgment as a matter of law.

[9] In the deposition testimony cited by Plaintiffs, Plaintiff Farr testified that she was assured by Defendant Cox that she had liability insurance that would cover Bourdieu and that she relied on that assurance in allowing Bourdieu to go to Defendant Cox's property. *Id.* at 90:4-91:11. The Court makes no determination as to whether the evidence cited by Plaintiffs supports the existence of a binding contract under Texas law.

**2. <u>Fraud Claim</u>**

In their Second Amended Complaint, Plaintiffs assert a claim of fraud against Defendants. Doc. 107 at 10. Defendants do not argue that this claim should be dismissed, so the Court will not grant summary judgment on this cause of action.

**3. <u>Negligent Operation of Training Facility</u>**

Plaintiffs also assert a claim for negligent operation of a training facility, alleging that "Defendant was negligent in the Operation of a Training Facility as set forth above and in violation of the Texas Racing Commission Rules and Regulations, or was operating a Training Facility without a proper license as required by Texas Racing Commission." *Id.* at 4-5. In the briefing on Defendants' motion, the parties agreed that it is undisputed that "Defendants have never conducted official workouts for racehorses at their property and the property is not regulated by the Texas Racing Commission." Doc. 150 at 5, Undisputed Fact No. 11; Doc. 165 at 7-8, Response to Undisputed Fact No. 11. The Court will thus grant summary judgment in favor of Defendants as to this cause of action.

## IV.
## CONCLUSION

For the reasons stated above, the Court will **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment.

The Court will **GRANT** Defendants' motion on Plaintiffs' claim of gross negligence to the extent the claims are grounded in the first, third, fifth, or sixth exception to immunity from liability under the Texas Farm Animal Activity Act. The Court will also **GRANT** summary judgment as to Plaintiffs' cause of action for negligent operation of a training facility.

The Court will **DENY** Defendants' motion on Plaintiffs' claim of gross negligence to the extent the claims are grounded in the second and fourth exception to immunity from liability under the Texas Farm Animal Activity Act, as the Court determines there exists genuine disputes of material fact as to the applicability of those exceptions. The Court further **DENIES** summary judgment as to Plaintiffs' causes of action for breach of contract and fraud.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE